**United States District Court**
For the Northern District of California

1
2
3
4
5                IN THE UNITED STATES DISTRICT COURT

6              FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   MODIUS, INC.,                                    No. C 06-02074 SI

9              Plaintiff,                            **ORDER GRANTING DEFENDANT'S
                                                     MOTION TO DISMISS**
10      v.

11  PSINAPTIC, INC.,

12             Defendant.
                                              /
13

14       On April 28, 2006, the Court heard oral argument on defendant's motion to dismiss for lack of

15  subject matter jurisdiction and improper venue.  After careful consideration of the arguments of counsel

16  and the papers submitted, the Court hereby GRANTS defendant's motion.

17

18

19                              **BACKGROUND**

20       Plaintiff Modius, Inc., a Delaware corporation with its principal place of business in California,

21  brings suit against defendant PsiNaptic, Inc., a Canadian corporation with its principal place of business

22  in Calgary, Alberta.  First Amended Complaint ("Complaint"), ¶1 and ¶4.  The parties began

23
    negotiations in June 2004 for a reseller agreement (hereinafter "Reseller Agreement") under which

24
    Modius would be granted a non-exclusive license to distribute PsiNaptic's software once it was bundled

25
    with Modius's software products.  *Id.* at ¶5.  Under the proposed Reseller Agreement, Modius would

26
    be provided the software's source code in machine readable form only and Modius employees would

27

28

not be able to read the software source code. *Id.* at ¶5(b).  PsiNaptic's CEO, Aaron Dagan, traveled on numerous occasions to Modius's headquarters to negotiate the agreement. *Id.* at ¶8.  Contact was also made by telephone, email, and facsimile. *Id.*

Modius's President, Craig Compiano, told Dagan from the beginning of negotiations that Modius required PsiNaptic to agree to a source code escrow agreement.[1] *Id.* at ¶9.  Modius expressly required PsiNaptic to escrow its source code to an independent third party who would release the source code to Modius if PsiNaptic went out of business or ceased supporting its software. *Id.*  Dagan repeatedly represented that PsiNaptic would escrow the source code to an independent third party escrow agent. *Id.* at ¶10.

On June 30, 2004, the parties signed the Reseller Agreement. *Id.* at ¶11.  Section 1.1(cc) and Section 3.2 of the Reseller Agreement required that PsiNaptic place the source code in escrow pursuant to the terms of a Source Code Escrow Agreement. *Id.*  The escrow agreement was to be attached to the Reseller Agreement as Schedule G, but Modius rejected the agreement that PsiNaptic proposed. *Id.* The parties agreed to execute the Reseller Agreement, and planned to finalize the details of the Source Code Escrow Agreement. *Id.*  Modius understood that the parties were in mutual agreement that the source code would be escrowed to an independent third party.

In the following months, PsiNaptic never proposed a new source code escrow agreement. *Id.* at ¶12.  When PsiNaptic completed software integration, it sent an invoice to plaintiff for $10,000 in

---

[1] Source code escrow agreements are standard practice when one company licenses software from another for the purposes of integrating the software into a product that will subsequently be re-sold in the market. *Id.* at ¶10.  Its purpose is to protect the licensee in the event that the licensor decides to stop supporting its software or in the event it goes out of business, by making the source code available to the licensee's software engineers so they can interpret and manipulate the software in the event of problems. *See id.* at ¶9.

**United States District Court**

For the Northern District of California

November 2004.  *Id.*  Modius refused to pay the invoice until PsiNaptic complied with its obligation to escrow the source code pursuant to the Reseller Agreement.  *Id.*

On December 7, 2004, Modius proposed a source code escrow agreement, where the source code would be escrowed to an independent third party and released in the event that PsiNaptic discontinued support of its software or declared insolvent.  *Id.* at ¶13.  PsiNaptic agreed to review the proposed agreement, and on February 15, 2005, PsiNaptic's legal counsel provided a revised version of the escrow agreement to Modius's attorneys.  *Id.* at ¶¶13-14.  Dagan traveled to Modius's headquarters to finalize the escrow agreement.  *Id.* at ¶14.  PsiNaptic's revised version did not allow the source code to be released if PsiNaptic chose to stop supporting its product.  *Id.*  It also identified PsiNaptic's own attorneys as the escrow agent.  *Id.*  These new terms were unacceptable to Modius, and Dagan agreed to accept Modius's version of the escrow agreement.  *Id.*  Modius then paid $5,000, and agreed to pay another $5,000 upon the execution of a fully documented escrow agreement.  *Id.*

On March 1, 2005, PsiNaptic refused to execute Modius's escrow agreement which the parties had agreed to at the February 15, 2005, meeting.  *Id.* at ¶15.  On March 18, 2005, a telephone conversation between Modius and PsiNaptic revealed that it was the custom and practice of PsiNaptic to escrow source code only to its legal counsel, that its legal counsel would petition courts to interfere with access to the source code, and that these proceedings would in effect deny access to the source codes for a period of two to three years after the release event.  *Id.*

Modius terminated the Reseller Agreement on August 16, 2005, pursuant to Section 12.1 of the Reseller Agreement based on PsiNaptic's material breach of the contract, and ceased integrating PsiNaptic's software into its products.  *Id.* at ¶¶18-19.  On November 24, 2005, PsiNaptic asserted that the parties were bound by a form of the escrow agreement allegedly circulated on or prior to the

3

United States District Court

For the Northern District of California

execution of the Reseller Agreement, and that Modius had no right to terminate the Reseller Agreement pursuant to Section 12.1.  PsiNaptic also asserted that it was entitled to damages of $150,000.  *Id.* at ¶20.    On December 9, 2005, PsiNaptic filed suit in the Court of Queen's Bench, City of Calgary, Alberta, Canada, for breach of contract.  Dagan Decl., ¶5 and Ex. B.  Modius later filed this action on January 5, 2006, in the Superior Court of California; it was removed to this Court on March 20, 2006. Notice of Removal, ¶1.   Plaintiff's complaint contains eight causes of action: (1) intentional misrepresentation, (2) fraudulent inducement, (3) negligent misrepresentation, (4) breach of written contract, (5) breach of oral contract, (6) declaratory relief, (7) recission pursuant to California Civil Code § 1692, and (8) recission for mutual mistake.  Defendant PsiNaptic now moves to dismiss the action for lack of personal jurisdiction and improper venue.

## DISCUSSION

Defendant argues that its motion should be granted for the following reasons: (1) PsiNaptic Inc., a Canadian corporation, is not subject to the personal jurisdiction of California; (2) the parties have bargained contractually for Canada as a venue for dispute resolution; and (3) the parties are currently litigating the same dispute in Canada.

## I.     PsiNaptic's Motion to Dismiss for Lack of Personal Jurisdiction

In any action, personal jurisdiction must exist for each defendant.  *See* Fed. R. Civ. P. 12(b)(2). Personal jurisdiction over a non-resident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and justice"

4

**United States District Court**
For the Northern District of California

1    (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946). Where there is no

2    federal statute applicable to determine personal jurisdiction, a district court should apply the law of the

3    state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

4    2004). California law requires only that the exercise of personal jurisdiction comply with federal due

5

6    process requirements. *See id.* at 800-01.

7            If a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the

8    district court's personal jurisdiction over the defendant. *See Doe I v. Unocal Corp.*, 248 F.3d 915, 922

9    (9th Cir. 2001) (per curiam). However, without an evidentiary hearing, the plaintiff need only make a

10   prima facie showing of jurisdiction to avoid the motion to dismiss. *See id.*; *see also Data Systems, Inc.*

11   *v. Systems Tech Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). That is, the plaintiff must present

12   facts which, if true, establish jurisdiction. *See Unocal*, 248 F.3d at 922. A district court's jurisdiction

13   analysis must consider plaintiff's version of the facts to be true, and "conflicts between the facts

14   contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Unocal*, 248 F.3d at 922

15

16   (quoting *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); *see also Bancroft*

17   *& Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

18

19          Plaintiff contends that the Court may exercise specific jurisdiction over defendant. The Ninth

20   Circuit employs a three-part test to determine whether a court may exercise specific jurisdiction over

21   a defendant. First, the defendant must purposefully direct his activities to the forum state, consummate

22   some transaction with the forum or resident thereof, or purposefully avail himself of the privileges of

23   conducting activities in the forum state, thereby invoking the benefits of the forum state's laws. *See*

24

25   *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir. 2003). Second,

26

27

28                                                      5

the plaintiff's claim must be one that arises out of the defendant's forum-related activities. *See id.* Third, exercising jurisdiction must be reasonable. *See id.*

### A.    PsiNaptic Purposefully Availed Itself of the Privileges and Benefits of Conducting Activities in California

Defendant argues that plaintiff has failed to establish that it purposefully availed itself of California's privileges and benefits. Defendant points out that plaintiff initiated contact to do business with PsiNaptic, and that PsiNaptic merely responded to defendant's inquiries and then agreed to enter the Reseller Agreement. Degan Decl., ¶4. Defendant also argues that the Reseller Agreement between the parties specifically provides that the Reseller Agreement is governed in all respects by Canadian law, revealing PsiNaptic's lack of intention to establish contacts with California. *See* Reseller Agreement, attached to Degan Decl., Ex. A, Section 13.7.

In a jurisdictional analysis, the Court must determine whether the defendant has purposefully availed itself of the forum state by "deliberately" engaging in significant activities within a state, or has created "continuing obligations" between itself and residents of the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *see also Roth v. Marquez,* 942 F.2d 617, 623 (9th Cir. 1991) (if the result of the contract contemplates an ongoing relationship in the forum state, it is sufficient to find purposeful availment under a contract claim and support the exercise of jurisdiction). Dagan, PsiNaptic's CEO, entered the forum state on several occasions to negotiate a Reseller Agreement which would establish an ongoing relationship between the two parties, in which PsiNaptic would receive royalty payments as Modius sold its bundled software. *See* Reseller Agreement, as attached to Degan Decl., Ex. A, Section 6.1 (Modius will pay PsiNaptic royalties each calendar quarter for the term of the

6

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   agreement). Thus according to the terms of the contract, PsiNaptic and Modius were to have an ongoing

2   relationship. *See Burger King,* 471 U.S. at 478-79 (prior negotiations, contemplated future

3

4   consequences, terms of the contract, and actual course of dealing will be evaluated in determining

5   whether the defendant purposefully established minimum contacts with the forum).

6           The Court disagrees with defendant and finds that PsiNaptic purposefully established contacts

7   with the forum, and purposefully availed itself of the privileges of conducting business activities within

8   California.

9

10

11          **B.      Plaintiff's Claims Arise Out of PsiNaptic's Activity in California**

12          The Ninth Circuit applies a "but-for" test to the second element of the specific jurisdiction

13  analysis. *See Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).  The Reseller Agreement was

14  negotiated and executed in California, as well as the negotiations regarding the Source Code Escrow

15
    Agreement.  Because the plaintiff's claims arise out of these business dealings, the Court finds that
16
    plaintiff has satisfied the second element of the jurisdiction analysis.
17

18

19          **C.      The Court's Exercise of Jurisdiction is Reasonable**

20          The Ninth Circuit considers seven factors in determining whether the exercise of jurisdiction is

21
    reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2)
22
23  the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty

24  of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

25  judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

26

27

28                                                      7

*United States District Court*
For the Northern District of California

1  convenient and effective relief; and (7) the existence of an alternative forum. *See Mattel, Inc. v. Greiner*

2  *& Hausser GmbH,* 354 F.3d 857, 866 (9th Cir. 2003).

3
4     With the first two prongs of the jurisdictional analysis satisfied, it is defendant's burden to

5  present a compelling case that exercising jurisdiction would be unreasonable. *See Ballard,* 65 F.3d at

6  1500.

7

8          **1.**   **Extent of Defendant's Purposeful Interjection**

9
10     Defendant argues that PsiNaptic's contacts with the forum state are limited -- it has no offices

11  in California, does not own or lease any real property in California, has no employees working in

12  California, and has never agreed to be subject to jurisdiction in California. Dagan Decl., ¶3. Defendant

13  argues that PsiNaptic was not the one to initiate contact with Modius. *Id.* at ¶4. However, plaintiff

14  alleges that PsiNaptic actively solicits business from entities located in California, and sends

15  representatives to the state for the purposes of soliciting business, negotiating transactions, and

16  documenting transactions. Complaint, ¶1. Plaintiff's allegations, if true, show that PsiNaptic

17
18  extensively does business in the state.

19

20          **2.**   **Burden on the Defendant of Defending in California**

21
22     Plaintiff argues that given Canada's proximity and similarity to the United States, there is a

23  "substantially lighter burden [than other foreign defendants] in presenting a defense in the United

24  States." *Aristech Chemical Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 628 (6th Cir. 1998).

25  Defendant argues that because the parties are already litigating in Canada, it would be inconvenient to

26
27
28                   8

**United States District Court**

For the Northern District of California

litigate the same dispute in another country and risk inconsistent judgments.  Plaintiff disagrees that it

is the same dispute since it has brought tort claims in this action.

### 3.      Existence of an Alternative Forum

Defendant argues that a suitable alternative forum exists in Canada – Canadian laws and

procedures are neither inferior nor oppressive compared to the laws and procedures of the United States.

Defendant also argues that courts in the United States routinely enforce forum selection clauses

designating venue in Canada.  Plaintiff contends that while an alternative forum exists in Canada, there

are substantial differences between discovery procedures, such as the inability to take depositions of

non-party witnesses, limited pretrial expert disclosure, and the lack of any guarantee of a right to a jury

trial.[2]

### 4.      Importance of the Forum to the Plaintiff's Interest in Convenient and Effective Relief

Plaintiff argues that California is the most convenient forum as its witnesses, operations, and

evidence are located in California.  Plaintiff has no offices in Canada, does not own or lease real

property, and has no employees or agents in Canada.  Compiano Decl., ¶3.  Defendant points to the fact

that plaintiff has already submitted to jurisdiction in Canada for the other lawsuit, and that it would be

inconvenient to plaintiff to defend it suit in Canada.

In considering the above factors to determine whether the exercise of jurisdiction is reasonable,

the Court finds that it would not be unreasonable for defendant to defend its case in California.

---

[2] Plaintiff has submitted excerpts of the Alberta Rules of Court relating to discovery by oral examination and discovery of experts, and a statute governing the ability of parties to obtain a jury trial. *See* Lee Decl., Ex. A and B.

Defendant fails to argue that its representatives do not frequently travel to California, or that it lacks

sufficient resources to do so.  Given the extent of defendant's contact with the forum state and the

importance of the plaintiff's interest in convenient and effective relief, the Court DENIES defendant's

motion to dismiss for lack of personal jurisdiction.

**II.      Motion to Dismiss Based on Forum Selection Clause**

Defendant moves to dismiss based on a forum selection clause contained in the Reseller

Agreement in Section 13.7.  The clause states:

> This Agreement will be governed in all respects by the laws of the Province of Alberta
> and Canada, excluding any conflict of laws provisions.  The parties agree that the United
> Nations Convention on Contracts for the International Sale of Goods is specifically
> excluded from application to this Agreement.  The Court of Queen's Bench, in the City
> of Calgary, Province of Alberta, Canada will have exclusive jurisdiction over disputes
> under this Agreement.  Modius consents to personal jurisdiction of the above courts.

*See* Reseller Agreement, attached to Dagan Decl., Ex. A, Section 13.7.

The Court will treat a motion to dismiss based on a forum selection clause as a Federal Rule of

Civil Procedure 12(b)(3) motion to dismiss for improper venue.  *See Argueta v. Banco Mexicano, S.A.*,

87 F.3d 320, 324 (9th Cir. 1996).  Once venue is challenged by the defendant, the plaintiff bears the

burden of establishing that venue is proper.  *See Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d

812, 816 (4th Cir. 1979).  Under a Rule 12(b)(3) motion to dismiss, the pleadings need not be accepted

as true, as would be required under a Rule 12(b)(6) analysis, and the court "may consider facts outside

of the pleadings." *Richardson v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998); *Argueta*, 87

F.3d at 324 (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991)).  Because a 12(b)(3) motion

has a dramatic effect on plaintiff's forum choices, the trial court must "draw all reasonable inferences

in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."

10

*Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2003).  Alternatively, the court

may hold an evidentiary hearing to resolve questions of credibility or disputed facts.  *Id.* at 1139-40.

Forum-selection clauses are "prima facie valid and should not be set aside unless the party

challenging enforcement of such a provision can show it is 'unreasonable' under the circumstances."

*Argueta*, 87 F.3d at 325 (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  Specifically,

a forum-selection clause is unreasonable if:

> (1) [I]ts incorporation into the contract was the result of fraud, undue influence, or
> overweening bargaining power . . . (2) the selected forum is so gravely difficult and
> inconvenient that the complaining party will for all practical purposes be deprived of its
> day in court . . . or (3) enforcement of the clause would contravene a strong public policy
> of the forum in which the suit is brought.

*Argueta*, 87 F.3d at 325 (internal quotations and citations omitted) (discussing the *Bremen* exceptions).

Plaintiff argues that the forum selection clause exists as a result of PsiNaptic's intentional

misrepresentations and fraudulent conduct.  Plaintiff claims that it would not have accepted the forum

selection clause or the choice of law provision if it had not been induced into enter into the Reseller

Agreement by PsiNaptic's misrepresentations. Compiano Decl., ¶2.  Plaintiff also argues that the forum

selection clause does not encompass its tort claims for intentional misrepresentation, fraudulent

inducement, and negligent misrepresentation, which are based on theories that are extra-contractual.

**A.      The *Bremen* Fraud Exception Does Not Invalidate the Forum Selection Clause**

Defendant argues that plaintiff has mistakenly applied the fraud exception in *Bremen,* as it was

clarified by *Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir. 1998).  In *Richards,* the

appellants argued that the choice of law clauses in their contract with a British company should be

repudiated for fraud.  The appellants argued that they would not have accepted the choice of law clause

11

**United States District Court**
For the Northern District of California

1   if they had known it would mean they would sacrifice valid claims in the United States. *See id.* at 1296-

2   97. The *Richards* court found that appellants failed to establish fraud according to *Bremen,* having

3

4   failed to allege that defendants misled them as to the legal effect of the choice clauses or fraudulently

5   inserted the clauses without their knowledge. *Id.* at 1297 (simply alleging that one was duped into

6   signing the contract is not enough; to escape a forum selection clause on the grounds of fraud, a party

7   must show that "the *inclusion of that clause in the contract* was the product of fraud or coercion.").

8        Plaintiff's CEO's declaration asserts, "Had I known of PsiNaptic's misrepresentations [with

9
    respect to PsiNaptic's willingness to deposit the source code into an escrow held by an independent third
10
    party], I would not have agreed to enter into the Reseller Agreement in accordance with the laws of
11
12  Calgary, Alberta or to agree to venue for any resolution of such disputes in Calgary, Alberta."

13  Compiano Decl., ¶¶11-12. The Court finds that the plaintiff's assertions, taken as true for the purposes

14  of Rule 12(b)(3), are not enough to meet the first *Bremen* exception. Plaintiff has failed to assert that

15
    the inclusion of the forum selection clause in the contract was itself a product of fraud or coercion.
16
17  Accordingly, the Court finds the forum selection clause valid and enforceable.

18

19              **B.     The Forum Selection Clause Applies to Contractual and Tort Causes of
                         Action Arising Under the Reseller Agreement.**
20

21       The parties raise the question of whether the forum selection clause applies to plaintiff's tort

22  claims. Plaintiff argues that its claims for intentional misrepresentation, negligent misrepresentation,

23  and fraudulent inducement do not raise a contractual dispute governed by the forum selection clause.

24  According to the forum selection clause, "The Court of Queen's Bench, in the City of Calgary, Province

25

26

27

28                                                      12

**United States District Court**

For the Northern District of California

1    of Alberta, Canada will have exclusive jurisdiction *over disputes under this Agreement*."   Reseller

2    Agreement, attached to Degan's Decl., Ex. A, Section 13.7 (emphasis added).

3
     The Ninth Circuit has stated in *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th
4
     Cir. 1988), that "whether a forum selection clause applies to tort claims depends on whether resolution
5
6    of the claims *relates to* interpretation of the contract." *Id.* at 514 (emphasis added).   *Manetti-Farrow*

7    involved an exclusive dealership contract with a forum selection clause designating Florence, Italy, for

8    disputes "regarding interpretation or fulfillment" of the contract. *Id.* at 510.   The *Manetti-Farrow* court
9
     found that the tort claims in question (conspiracy and tortuous interference with contractual relations)
10
11   were related to the rights and duties enumerated in the exclusive dealership contract. *Id.* at 514.   The

12   court concluded that the claims could not be adjudicated without analyzing whether the parties were in

13   compliance with the contract.[3]   *Id.*   Therefore, because the tort causes of actions alleged were related

14   to "the central conflict over the interpretation" of the contract, the court found that they were in the
15
     scope of the forum selection clause.   *Id.*
16
17   Here, Modius's tort claims are as follows: (1) intentional misrepresentation – PsiNaptic

18   intentionally and repeatedly represented to Modius that it would escrow the source code to an

19   independent third party when it had no intention of doing so, because it knew that it would materially

20   induce Modius to enter into the Reseller Agreement; (2) fraudulent inducement – PsiNaptic knowingly

21   and falsely made representations with the intent to induce Modius's reliance on PsiNaptic's
22
     representations, enter into the Reseller Agreement, agree to resolve disputes by binding arbitration with
23

24

25       [3] The *Manetti-Farrow* complaint alleged that defendant instituted a price squeeze by raising
     prices substantially above what it charged other customers, that defendant fraudulently obtained
26   Manetti-Farrow's customer lists and business information to solicit Manetti-Farrow's customers, that
     defendant wrongfully neglected delivery orders, and that defendant wrongfully abrogated the contract.
27   *See Manetti-Farrow,* 858 F.2d at 514.

28                                                    13

United States District Court

For the Northern District of California

1   the laws of Canada, and pay PsiNaptic; and (3) negligent misrepresentation – PsiNaptic negligently

2   misrepresented that it would enter into a source code escrow agreement without having a reasonable

3   basis that this was true. *See* Complaint, ¶¶21-45.  The Court finds that all of Modius's tort causes of

4   action relate to the Reseller Agreement.  A factfinder necessarily needs to examine and interpret the

5   Reseller Agreement for evidence of what the parties intended their rights and duties under the Source

6

7   Code Escrow Agreement to be.[4]

8           The Court finds that Modius's other claims – breach of written contract, breach of oral contract,

9   declaratory relief, and recission – are contractual disputes which arise under the Reseller Agreement,

10

11  and are thus governed by the forum selection clause.

12          At oral argument, counsel for PsiNaptic agreed not to object, on timeliness or other procedural

13  grounds, to Modius re-filing the claims made here in the action before the Court of Queen's Bench, City

14  of Calgary, Alberta, Canada.  Based on this agreement, and for the reasons outlined above, the Court

15  GRANTS defendant's motion to dismiss for improper venue based on the forum selection clause.

16

17

18                                      **CONCLUSION**

19          For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's

20  motion to dismiss (Docket No. 3).

21

22

23      **IT IS SO ORDERED.**

24  Dated: May 2, 2006                                              *Susan Illston*

25  _____

26      [4] The Reseller Agreement refers to the Source Code Escrow Agreement in Section 1.1(cc) and
    Section 3.2, which was to be attached as Schedule G.  Schedule G was never attached to the Reseller
27  Agreement as the parties failed to reach an agreement on the Source Code Escrow Agreement.

28                                          14

1

2

SUSAN ILLSTON
3     United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California

15